UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| RALPH STEPHENS BAZE, JR., | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 01-31-ART |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| RANDY WHITE, | ) | |
| Warden of Kentucky State Penitentiary, | ) | |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Ralph Baze murdered Sheriff Stephen Bennett and Deputy Sheriff Arthur Briscoe when the officers tried to arrest him on an outstanding warrant. Nineteen years after a jury found him guilty and sentenced him to death, Baze seeks to overturn his conviction on the grounds that his trial attorney failed to properly object to a video of the crime scene played during the sentencing portion of his trial. While Baze's trial attorney vigorously objected to the admission of the video under state evidentiary rules, Baze claims that his attorney should have also cited federal constitutional law in making his objection.

This is not the first time Baze has raised a constitutional claim based on the crime scene video. As part of his federal habeas petition to this Court in 2002, Baze argued that the trial court's decision to admit the video violated several of his constitutional rights. The Court did not reach the merits of the claim, instead holding that it was procedurally defaulted. Baze now seeks relief from that judgment under Federal Rule of Civil Procedure 60(b), claiming that an ineffective-assistance claim is now available to him under the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

The question before the Court is simple: Is it ineffective assistance of counsel for a defense attorney to object to evidence by raising the stronger state-law grounds for excluding the evidence, but not the weaker federal grounds for excluding the evidence? The answer is clearly "No." The Court will therefore deny Baze's motion for relief from the Court's judgment.

## BACKGROUND

A Kentucky jury convicted Ralph Baze of the 1992 murders of Sheriff Stephen Bennett ("Bennett") and Deputy Sheriff Arthur Briscoe ("Briscoe"). *See Baze v. Parker*, 371 F.3d 310, 315 (6th Cir. 2004). Bennett and Briscoe were attempting to arrest Baze at the time. Baze, a twice-convicted felon, was wanted in Ohio for assaulting a police officer, jumping bail, receiving stolen property, and flagrant non-support. *Id*. Bennett and Briscoe learned that Baze was at his home in Powell County, Kentucky, and there to arrest him on the outstanding Ohio warrant. *Id*. at 316. When the officers arrived, Baze fled into the surrounding woods and a shootout ensued. *Id*. Baze shot Bennett three times in the back with an assault rifle. *Id*. Briscoe ran out of ammunition, and Baze shot him twice in the back as he tried to escape. *Id.* at 316–17. Both Bennett and Briscoe died at the scene.

The Kentucky Supreme Court upheld Baze's murder conviction and sentence on direct appeal, *Baze v. Commonwealth*, 965 S.W.2d 817, 826 (Ky. 1997), and on his motion to vacate, *Baze v. Commonwealth*, 23 S.W.3d 619, 628 (Ky. 2000). The United States Supreme Court denied writs of certiorari to both Kentucky Supreme Court decisions. *Baze,* 371 F.3d at 317. Baze then filed a petition for habeas relief pursuant to 28 U.S.C. § 2254, which the

Court denied on September 27, 2002. R. 36. The Sixth Circuit affirmed the Court's decision on June 9, 2004. *Baze,* 371 F.3d at 330.

Baze also sought access to Kentucky Department of Corrections ("KDOC") Officers for the purposes of mounting a clemency petition. Baze brought a declaratory judgment action in Franklin Circuit Court alleging that KDOC violated his right to due process when it denied his request to interview the corrections officers. The Franklin Circuit Court denied his request for relief, and the Kentucky Supreme Court affirmed that decision on January 21, 2010. *Baze v. Thompson*, 302 S.W.3d 57, 60 (Ky. 2010). Baze then filed a petition in this Court seeking access to prison personnel who were not willing to speak with his attorneys. *See Baze v. Parker*, 711 F. Supp. 2d 774 (E.D. Ky. 2010). The Court denied that motion, and the Sixth Circuit affirmed that denial. *Id.* at 781; *Baze v. Parker*, 632 F.3d 338, 346 (6th Cir. 2011). Baze petitioned the United States Supreme Court for certiorari, but the high court declined to hear his case. *Baze v. Parker*, 132 S. Ct. 230 (2011).

Now, Baze has filed a motion under Federal Rule of Civil Procedure 60(b) seeking relief from the Court's 2002 judgment denying his § 2254 petition. R. 101. Specifically, Baze asserts that an ineffective-assistance-at-trial claim is now available to him after the Supreme Court's decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). R. 101 at 19–23. Baze also asks the Court to hold his motion in abeyance while the Supreme Court considers *Trevino v. Thaler*, 133 S.Ct. 524 (2012), a case that further defines which state habeas hearings count as "initial-review collateral proceedings" under *Martinez*. R. 102. The Supreme Court has recently decided *Trevino*. *See Trevino v. Thaler*, No. 11–10189, slip op. (U.S. May 28, 2013).

3

## DISCUSSION

I. **Trial Counsel's Objection to the Video Presented at Baze's Sentencing Hearing**

At Baze's trial, the government sought to introduce photographs and a videotape, which both showed the crime scene and the victims' bodies. R. 107-1 at 4–7 (Tr. 1510–13). Baze's motion creates the impression that his trial attorney made no objection whatsoever to the introduction of the videotape, *see* R. 101 at 2–3 & n.3, but that is not the case.

His trial attorney strongly objected to the introduction of both the photographs and the videotape. *See* R. 107-1 at 7 (Tr. 1513). Defense counsel made four arguments for excluding both the photographs and the videotape. He argued that: (1) their depictions were "gruesome;" (2) they "would have an emotional impact on the jury;" (3) they would be unduly "prejudicial" to Baze because they were "not necessary to prove any disputed facts;" and (4) they tended to show a "heinous, atrocious and cruel type act," which would effectively introduce a "non-statutory aggravating factor" since Kentucky had not codified any statutory aggravating factor to account for the heinousness of the act. *See id.* at 5–7 (Tr. 1511–13). Defense counsel made an additional argument for specifically excluding the video, pointing out that because the officers' bodies had been moved before the video was shot the video footage was "even more gruesome" than the scene officers initially discovered. *Id.* at 7 (Tr. 1513). Finally, defense counsel argued that it would be redundant to introduce both the photographs and the video. *See id.* at 10 (Tr. 1516) (arguing that introducing both would be "redundant, cumulative"). The points that defense counsel raised about the video's content at trial are the same basic points that Baze now raises. *Compare id.* at 5–10 (Tr. 1511–16) (objecting to admission of photos and video), *with* R. 101 at 20–21

4

(asserting that defense counsel should have made the same basic arguments, but based on federal constitutional grounds).

While the trial court ultimately denied both objections, the objections did prompt the trial court to place conditions on the admission of the evidence at the guilt phase. The trial court required several pictures to be altered so that the jury would not see the victim's face. *See* R. 108-3 at 1–2 (Tr. 1471–72). Similarly, the trial court required the prosecution to present testimony qualifying the scenes depicted in the video for the jury, including the fact that the bodies had been moved before the video was shot. *See* R. 107-1 at 8–9 (Tr. 1514–15).

The video the jurors were shown appears to be filmed with a handheld camcorder and contains two parts. The first part is filmed at the crime scene by an unidentified law enforcement officer. The officer provides limited narration as he walks through the crime scene filming the major pieces of evidence. This portion lasts nearly sixteen minutes. During that time, the bodies of Bennett and Briscoe appear in frame for a total of approximately two minutes and thirty-six seconds.[1] The second portion of the video is filmed from a helicopter and shows the layout of Baze's cabin and the crime scene. This portion lasts just over six minutes.[2] The prosecution did not directly reference the crime scene video in its closing argument at the sentencing hearing. *See* R. 108-3 at 9–11 (Tr. 3968–70).

---

[1] Bennett's body is noticeable on camera during additional portions of the video showing his car and the ammunition casings surrounding it, but Bennett's body is covered by a sheet.

[2] There are also two gaps in the video where there is no footage, one gap between the two parts and one gap after the second part.

5

Baze's appellate counsel then pursued the issue on appeal. In his direct appeal to the Kentucky Supreme Court, Baze argued that the video was "clearly inflammatory" and violated his rights. R. 105-8 at 1–2 (excerpting Brief for Appellant, *Baze v. Commonwealth*, No. 94-SC-127-MR, at 123–24 (Ky. Aug. 15, 1995)). The Kentucky Supreme Court, however, was not persuaded. *See Baze*, 965 S.W.2d at 820 (dismissing Baze's challenge to the admission of the video as one of the issues so "without merit" it did not need to be "specifically addressed").

## II.     Baze Cannot Excuse His Procedural Default

Both *Martinez* and *Trevino* require Baze to make two showings in addition to establishing that Kentucky's appeal framework qualifies for the exception created in *Martinez*. First, his underlying ineffective-assistance-at-trial claim is substantial. Second, he received ineffective assistance of counsel at his state collateral review proceeding. Baze fails to make either of these showings. So Baze's motion for relief from judgment cannot succeed regardless of whether *Martinez* applies to Kentucky's habeas system. And since it does not matter whether *Martinez* applies to Baze's motion for relief from judgment, there is no need for further briefing in light of the Supreme Court's recent opinion in *Trevino*.

### A.     *Martinez v. Ryan* and *Trevino v. Thaler*

*Martinez* created a new basis for establishing "cause" to excuse a procedural default. 132 S.Ct. at 1318. Previously, habeas petitioners had been unable to claim ineffective assistance of counsel in collateral proceedings as a basis for excusing a defaulted claim. *See Coleman v. Thompson*, 501 U.S. 722, 756–57 (1991). *Martinez* carved out "a narrow exception" to that general rule by holding that "ineffective assistance of counsel *at initial-*

6

*review collateral proceedings*" could establish "cause" to excuse a prisoner's procedural default. 132 S.Ct. at 1315 (emphasis added). The *Martinez* Court used the term "initial-review collateral proceedings" as shorthand for state habeas proceedings that "provide the first occasion to raise a claim of ineffective assistance *at trial*." *Id.* (emphasis added). *Martinez* stressed that its ruling applied only to cases involving initial-review collateral proceedings, because in those cases the state habeas proceeding was effectively a prisoner's direct appeal for any ineffective-assistance claims. *Id.* at 1317. After *Martinez* there are two circumstances where a prisoner can excuse a procedurally defaulted ineffective-assistance claim based on his initial-review collateral proceeding. 132 S.Ct. at 1318. Only the second circumstance applies here.[3]

To excuse his procedural default under *Martinez*, Baze must make four showings. *See Trevino v. Thaler*, No. 11–10189, slip op. at 8 (specifying that there are four showings required under *Martinez*). First, Baze must demonstrate that his underlying ineffective-assistance-at-trial claim is "substantial." *Martinez*, 132 S.Ct. at 1318–19 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)). Second, he must show that his counsel in the initial-review collateral proceeding was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). *Martinez*, 132 S.Ct. at 1318. Third, he must show that his state collateral review proceeding was an "initial-review collateral proceeding" for his ineffective-assistance of trial claim. *Id.* at 1317. Finally, he must show that state law required him to raise his ineffective-assistance claim in an initial-review collateral proceeding. *Id.* at 1320.

---

[3] The first circumstance *Martinez* recognized is where the prisoner is not appointed counsel in the initial-review collateral proceeding. 132 S.Ct. at 1318. Baze's claim does not qualify because he had counsel in his initial state collateral proceeding. *See* R. 101 at 21 ("Initial-review collateral proceeding counsel's failure to raise the claim presented herein certainly constitutes ineffective assistance of counsel . . . .").

7

*Trevino* softened the requirement for the fourth showing. After *Trevino*, prisoners do not have to show that state law requires them bring their ineffective-assistance-at-trial claims in an initial-review collateral proceeding. *See* No. 11-10189, slip op. at 14. Instead, petitioners can simply show that the state's "procedural system—as a matter of its structure, design, and operation—does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 13. But *Trevino* still requires prisoners to show that their underlying ineffective-assistance-at-trial claim is substantial and that their initial habeas attorney was ineffective. *See id.* at 15.

The fact that Baze clearly fails to make either showing eliminates any need to decide whether *Martinez* applies to Kentucky's appeals system. *See* R. 102 (requesting the motion to be held in abeyance and received additional briefing in light of *Trevino* once it is decided). The Court therefore presumes that *Martinez* applies and assesses the two ineffective-assistance showings needed to excuse procedural default under *Martinez* and *Trevino*.

    **B.**    **Baze Fails to Demonstrate that his Underlying Ineffective-Assistance-at Trial Claim Is "Substantial"**

Baze cannot demonstrate that his underlying ineffective-assistance claim is "substantial." *Martinez*, 132 S.Ct. at 1318–19 (citing the standard for granting a certificate of appealability under *Miller-El*, 537 U.S. 322). To be "substantial" under *Martinez*, Baze must show that the ineffective-assistance claim he raises is "debatable amongst jurists of reason." *Miller-El*, 537 U.S. at 336 (articulating the standard cited in *Martinez*); *see also Cook v. Ryan*, 688 F.3d 598, 610 n.13 (9th Cir. 2012) (applying the same *Miller-El* standard under *Martinez*). That means establishing that reasonable jurists could debate whether his trial counsel's performance was: (1) objectively unreasonable under prevailing professional

norms; and (2) prejudicial to the defense. *Strickland*, 466 U.S. at 687–88. Baze fails to do either.

*Trial Counsel's Performance:* Initially, defense counsel's objection was within the range of reasonable professional assistance because counsel made the strongest available argument supporting his objection. As explained above, Baze's trial attorney made numerous arguments as to why the video should be excluded under Kentucky law. *See* R. 107-1 at 5–10 (Tr. 1511–16). Baze's brief does not identify any problematic aspects of the video's content that trial counsel failed to point out. He simply claims that defense counsel should have thrown in a reference to the federal Constitution. *Compare id.* (objecting to admission of photos and video), *with* R. 101 at 20–21 (asserting that defense counsel should have made the same basic arguments, but also cited the federal Constitution). This argument rings hollow because it criticizes defense counsel for focusing on the strongest grounds supporting his argument, which is a hallmark of effective advocacy.

The federal constitutional grounds that Baze faults his trial attorney for omitting is a much more demanding standard than the state-law grounds his trial attorney did assert.[4] Making a successful constitutional objection to visual evidence like the crime scene video is extraordinarily difficult. "In general, the introduction of photographic evidence of a crime victim does not violate a defendant's right to a fair trial." *Futch v. Dugger*, 874 F.2d 1483, 1487-88 (11th Cir. 1989) (collecting cases denying constitutional challenges). A defendant must show that the evidence is "so unduly prejudicial that it renders the trial fundamentally

---

[4] Baze does not cite any specific constitutional authority that would have supported trial counsel's argument for excluding the evidence, nor does he cite any cases in which courts have held that playing a crime scene video at a sentencing hearing violated a defendant's constitutional rights. *See* R. 101 at 20–22.

unfair." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). That is a much higher bar than state evidence law sets. *See Perry v. New Hampshire*, 132 S.Ct. 716, 723 (2012) (holding that a constitutional objection must prove much more than an average state-law evidentiary objection would).

Indeed, Kentucky law allowed Baze's trial attorney to argue for exclusion under several Kentucky rules that were far more favorable for Baze than the federal constitutional standard. Two examples suffice. First, defense counsel's reliance on Kentucky law allowed him to argue under Kentucky Rule of Evidence 403's balancing standard, weighing the prejudice of the video against its particular probative value. *See Brown v. Commonwealth*, 313 S.W.3d 577, 621 (Ky. 2010). That is a much more favorable standard for Baze than the constitutional one, which requires the defendant to weigh the allegedly prejudicial evidence against *all* the other evidence presented at trial. *See, e.g.*, *Beuke v. Houk*, 537 F.3d 618, 648 n.9 (6th Cir. 2008) (explaining that courts applying *Payne* to sentencing hearings must assess whether the disputed evidence impacted the hearing so as to make the resulting sentence fundamentally unfair); *Roe v. Baker*, 316 F.3d 557, 565 (6th Cir. 2002) (explaining that, in the prosecutorial misconduct context, courts applying *Payne* must "look to the totality of the circumstances to determine whether the misconduct denied [the defendant] a fair trial"). In fact, the federal constitutional standard is necessarily subsumed by Kentucky Rule of Evidence 403 because any evidence that would render the trial fundamentally unfair would necessarily outweigh its probative value. Defense counsel's arguments were therefore much likelier to succeed under state law. Not only that. There is no logical way that a federal constitutional objection would have succeeded where the easier-to-meet state-law objection failed.

Second, Kentucky law lends far greater support to defense counsel's argument that the video would have "an emotional impact on the jury." R. 107-1 at 5 (Tr. 1511). *Compare Ice v. Commonwealth*, 667 S.W.2d 671, 675–76 (Ky. 1984) (finding that a mother presenting pictures of her murdered daughter and answering questions about "her great love for the child" was unacceptable because it "engender[ed] sympathy for the victim and her family"), *with Payne*, 501 U.S. at 826 ("[T]he testimony illustrated quite poignantly some of the harm that [the defendant's] killing had caused; there is nothing unfair about allowing the jury to bear in mind that harm at the same time as it considers the mitigating evidence introduced by the defendant."). So the argument that defense counsel advanced at trial is actually much stronger than the one found in Baze's brief. It makes all the same points about the video's content as Baze does now, but connects them to precedent that is far more receptive to those points.

Thus, Baze's trial counsel provided objectively reasonable representation in objecting to the video. He made the strongest argument possible for excluding the evidence. The fact that counsel omitted an additional, far weaker source of support for his argument does not render his representation objectively unreasonable. *See United States v. Burgess*, 142 F. App'x 232, 241 (6th Cir. 2005) (holding that *Strickland* does not require counsel to raise every possible claim). Indeed, any such objection weak objection may have taken away from his credibility and the strength of his argument, and thus rendered Baze's counsel less effective. Baze therefore has not shown that his underlying ineffective-assistance-at-trial claim is substantial.

**Prejudice to the Defense:** Furthermore, Baze has no colorable claim to prejudice here. Baze must show that reasonable jurists would debate whether there is a reasonable

11

probability that, but for trial counsel's failure cite the federal constitutional grounds, Baze might have succeeded in excluding the video and avoiding a death sentence. *See Strickland*, 466 U.S. at 694. As explained above, the only difference between the argument that trial counsel did make, and the argument Baze claims his trial counsel should have made, is a reference to the federal Constitution. But the constitutional grounds that Baze claims his attorney should have raised require a much higher showing than the state-law grounds that counsel did raise. Baze's prejudice claim is thus akin to asserting that an appellate argument that failed under harmless error review would have succeeded under plain error review. *Cf. United States v. McKinney*, 954 F.2d 471, 475–76 (7th Cir. 1992) (explaining that harmless error review is a lower standard than plain error review). Such a claim is obviously untenable. Thus, reasonable jurists would not debate whether Baze's defense was prejudiced.

Since Baze does not raise a reasonably debatable argument under either of *Strickland*'s prongs, he has failed to demonstrate that his underlying ineffective-assistance claim is "substantial." *Martinez*, 132 S.Ct. at 1318–19. Thus, Baze cannot excuse his procedural default.

### C. Baze Fails to Establish that Habeas Counsel Was Ineffective

Baze fails to show that his state habeas counsel was ineffective in his initial-collateral review proceeding because he does not establish that counsel's performance was objectively unreasonable. Under *Strickland*, petitioners must overcome the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." 466 U.S. at 689. Since Baze's habeas counsel raised a number of issues in his initial-review

collateral proceeding, overcoming that presumption is "difficult." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[I]t is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."); *see also Baze*, 23 S.W.3d at 622 (listing the seven issues Baze's state habeas counsel did raise). Essentially, Baze must show that the ineffective-assistance claim he proposes here is "clearly stronger" than the issues his habeas counsel did raise in the initial-review collateral proceeding. *Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). And Baze does not.

All Baze argues is that his ineffective-assistance-at-trial claim has merit and his habeas counsel failed to raise the claim in the initial-review collateral proceeding. *See* R. 101 at 20–22. That is not enough to establish that habeas counsel's performance was objectively unreasonable under *Strickland*. The Supreme Court has frequently held that appellate counsel does not have to raise every possible nonfrivolous claim, and may narrow an appeal down to those nonfrivolous issues that counsel determines would maximize the defendant's chances of prevailing on appeal. *See Robbins*, 528 U.S. at 288. Here, Baze simply makes no showing indicating that his proposed ineffective-assistance-at-trial claim is "clearly stronger than issues that counsel did present." *Id.* Thus, Baze does not carry his burden of demonstrating that his counsel performed deficiently in his initial-review collateral proceeding and his default cannot be excused under *Martinez*, 132 S.Ct. at 1318.

### III. Certificate of Appealability

A Certificate of Appealability may issue only if Baze "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard

applied under § 2253(c) is the same standard applied under *Martinez*'s "substantial" inquiry. *See Martinez*, 132 S.Ct. 1318–19 (citing *Miller-El*'s standard for issuing certificates of appealability as the standard for assessing an underlying ineffective-assistance claim). Thus, Baze is not entitled to a Certificate of Appealability for the same reason his underlying ineffective-assistance claim lacks merit.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1) Petitioner Baze's motion requesting that the Court hold his motion for relief from judgment in abeyance until the Supreme Court decides *Trevino v. Thaler*, 133 S.Ct. 524 (2012), R. 102, is **DENIED AS MOOT**.

(2) Petitioner Baze's motion for relief from judgment under Federal Rule of Civil Procedure 60(b), R. 101, is **DENIED**.

(3) Warden White's motion to dismiss Baze's motion for relief from judgment, R. 105, is **DENIED AS MOOT.**

(4) Pursuant to 28 U.S.C. § 2253(c)(2), Bowling is **DENIED** a Certificate of Appealability.

This the 3rd day of June, 2013.



Signed By:
*Amul R. Thapar* AT
United States District Judge